IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ROBIN R. FRAZIER,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**MICHAEL J. ASTRUE, Commissioner,** )<br>**Social Security Administration,** )<br>)<br>**Defendant.** ) | Civil Action No.: 7:11cv265<br><br>By: Hon. Robert S. Ballou<br>United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Robin R. Frazier ("Frazier") filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383f.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued the issues. The case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the argument of counsel, and the applicable law. I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **RECOMMEND DENYING** Frazier's Motion for Summary Judgment (Dkt # 14), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt # 16).

# I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that she was disabled under the Act. Substantial evidence is such "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Frazier bears the burden of proving that she suffers under a disability as that term is interpreted under the Act. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *See also* 42 U.S.C. § 1382c(a)(3)(B). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. *See* 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

2

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. *Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983); *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

### Social and Vocational History

At all relevant times, Frazier has been a younger person under the regulations. (Administrative Record, hereinafter "R." 90, 497-513.) 20 C.F.R. § 404.1563(c). Frazier graduated from high school and completed a two and one-half year medical assistant college training program. (R. 40.) Frazier's past relevant work includes cafeteria attendant, cafeteria worker, dishwasher/dining room attendant, house cleaner, and deli cutter. (R. 58-61, 502.)

Frazier worked after the alleged onset of her disability. (R. 722.) From October 2003 through February 2004, Frazier worked thirty hours per week as a dishwasher and dining room worker. (R. 721-22.) In this position, Frazier washed dishes, vacuumed, mopped, swept, and worked in the dining room. (R. 722.)

3

In May 2004, Frazier completed a Daily Activities Questionnaire for the Social Security Administration and reported a range of daily activities. (R. 124-31.) Frazier stated that she assisted neighbors and friends with chores and played computer games for one to two hours per day. (R. 127.) Frazier drove or walked at least every other day to visit friends, went out for a meal with her husband or friends, attended social functions, went to therapy, or attended movies. (R. 124.) Although Frazier stated it was hard to clean her apartment, she also stated that she was able to prepare meals without help, vacuum (including pulling the furniture out), mop, dust, and do laundry. (R. 126.) Frazier shopped for groceries by herself. (R. 126.) Frazier visited friends and relatives two to three times per week by herself and also spoke over the telephone. (R. 128.) Frazier also volunteered at Salem Food Pantry, participated in community recycling, and volunteered with Bible school in the summer. (R. 128.)

In December 2004, Frazier completed another report of her functional abilities. (R. 147-54.) Frazier stated that she cared for her mother by doing her housework - vacuuming, dusting, and mopping - and doing laundry for her mother and husband. (R. 148.) Frazier prepared meals daily. (R. 149.) Frazier stated that she drove, grocery shopped once or twice a week, and could walk one mile before needing to stop and rest. (R. 150, 152.) Frazier also stated that she talked on the phone and used the computer at least every other day. (R. 151.) Frazier visited friends and family and went to church. *Id.*

At her May 24, 2006 administrative hearing, Frazier testified that she did light housecleaning and that she drove once or twice a week without difficulty. (R. 50.)

In January 2009, Frazier completed another function report, (R. 733-740.), stating that she had no problems with personal care, (R. 734.), and that she continued to do her husband's laundry and maintained her household including making made her bed, dusting, and completing

4

other light cleaning. (R. 735.) Frazier reported that she went outside daily, either walking or driving. (R. 736.) Frazier shopped and managed her finances. *Id.* Frazier stated that she read, watched television, and played computer games daily. (R. 737.)

**Claim History**

Frazier filed her applications for DIB and SSI on March 15, 2004, claiming disability since June 1, 2002.[1] (R. 90-2.) Her claims were denied initially and upon reconsideration. (R. 66-67.) On May 24, 2006, a hearing was held before an administrative law judge ("ALJ"), at which Frazier, represented by counsel, and a vocational expert testified. (R. 36-65.) The ALJ issued his decision denying her claims on September 22, 2006 finding that Frazier has the severe impairments of fibromyalgia, back pain, and migraines. (R. 11-24.) None of these impairments, either individually or in combination, met or medically equaled a listed impairment. (R. 20.) The ALJ found that Frazier had the residual functional capacity ("RFC") to push, pull, lift and/or carry up to fifty pounds occasionally and twenty-five pounds frequently, to stand and/or walk about six hours in an eight-hour workday, and to sit about six hours in an eight-hour workday. (R. 20.) Based on the testimony of the vocational expert, the ALJ concluded that Frazier could perform her past relevant work as a cafeteria attendant, housekeeper, deli worker, and cashier. (R. 22.) The ALJ also found that Frazier had job skills that were transferrable to other occupations existing in significant numbers in the national economy. (R. 23.) As such, the ALJ concluded Frazier was not disabled. On August 24, 2007, the Social Security Administration's Appeals Council denied Frazier's request for review of the ALJ decision. (R. 7-10.) The decision thereby became the final decision of the Commissioner.

---

[1] For her DIB claim, Frazier had the burden to prove that she was disabled during the time period between June 1, 2002 (alleged onset date) and June 30, 2004 (date last insured). (R. 14, 90, 93-4, 559 n.1.) 20 C.F.R. § 404.131(a). For her SSI claim, the relevant period is from April 2004 (the month after the month in which she filed her application) to January 21, 2010 (date of most recent administrative decision). (R. 21.) 20 C.F.R. § 416.335.

5

Frazier filed a complaint in this court seeking judicial review of the ALJ's decision. On July 3, 2008, then Magistrate Judge Michael Urbanski remanded this matter to the ALJ because the ALJ failed to explain his reasons for rejecting a portion of the opinion of one of the state agency physicians. (R. 563.) Judge Urbanski found that substantial evidence supported "the ALJ's conclusion that Frazier's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible." (R. 567.)

After the court's remand, on November 17, 2008, Frazier filed a second application for SSI, alleging disability since November 17, 2005. (R. 669-76.) The new claim was consolidated with the older claims. (R. 500.) On October 29, 2009, the ALJ held another administrative hearing, at which Frazier, represented by counsel, and a vocational expert testified. (R. 517-47.) On January 21, 2010, the ALJ issued his decision denying Frazier's claims for both DIB and SSI benefits.. (R. 500-513.) The ALJ incorporated his September 22, 2006 opinion finding that Frazier had the severe impairments of fibromyalgia, back pain, and migraines. (R. 506.) In addition, the ALJ found that the combination of her scoliosis, epilepsy, and a disorder of the muscle, ligaments, and/or joints cause more than minimal limitations and were, therefore, collectively a severe impairment. *Id.* The ALJ found that none of the impairments met or medically equaled a listed impairment. (R. 509.) The ALJ found that Frazier had the RFC to perform sedentary exertional work activity with certain exertional limitations, and was precluded from performing any of her past relevant work. (R. 511.) However, based on the testimony of the vocational expert, the ALJ found that an individual with Frazier's RFC, and even a more restrictive RFC, could perform work existing in substantial numbers in the national economy. (R. 512.) The ALJ thus concluded that Frazier was not disabled. Frazier submitted written exceptions to the ALJ's decision to the Appeals Counsel, which declined to exercise jurisdiction.

6

(R. 472-75.) Frazier then filed the instant complaint seeking judicial review of the ALJ's second decision.

## III.

### ALJ's Assessment of Physician Opinions

Fraizer argues that the ALJ erred in evaluating the opinions of her treating neurologist Mark C. Scialabba, M.D. and state agency consulting physician Frank M. Johnson, M.D.

In evaluating the weight to give the opinion of a medical source, the ALJ considers various factors, including supportability and consistency. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The more a medical source's opinion is supported by evidence such as "medical signs and laboratory findings," and is consistent with the record as a whole, the more weight the ALJ should accord to that opinion. 20 C.F.R. §§ 404.1527(c)(3-4), 416.927(c)(3-4). When, however, the opinion is not supported by the evidence or consistent with the record, the ALJ has the discretion to accord it less weight.

*Assessment of Dr. Johnson's Opinion*

Frazier argues that the ALJ erred in rejecting certain limitations in Dr. Johnson's assessment of her ability to reach, handle, and finger by Dr. Johnson.[2] (R. 409-415.) Dr. Johnson found that Frazier could frequently lift/carry fifty pounds, occasionally lift/carry twenty-five pounds, stand/walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push/pull without limitations other than in the area of lifting/carrying. (R. 410.) Dr. Johnson noted that Frazier had a limited ability to reach in all

---

[2] The ALJ's initial decision in this case was remanded by this court because the ALJ failed to provide an explanation for rejecting a portion of the opinion of Frank M. Johnson, M.D., one of the state agency physicians who reviewed Frazier's case. As stated by Judge Urbanski, "Despite the ALJ's opinion that Dr. Johnson's opinion deserved great weight, however, the ALJ concluded, without explanation, that Frazier had no postural, manipulative, or environmental limitations and accordingly, rejected those sections of Dr. Johnson's assessment." (R. 562.) In doing so, the ALJ "seemingly disregarded the regulations' mandate that the ALJ explain the weight given to the opinion of a state agency medical consultant." *Id.*

7

directions, handle, and finger. (R. 411.) Dr. Johnson assigned these limitations despite noting that Frazier had received injections for her stenosising tenosynovitis in her right hand and those injections had considerably improved her symptoms. (R. 401-2, 414-15.)

In assessing Dr. Johnson's opinion, the ALJ noted that the opinion conflicted with the bulk of the evidence in the record. (R. 511.) Specifically, the ALJ stated that "medical records throughout the period under adjudication reflect no significant continuing difficulty with the claimant's use of her hands and/or fingers in performing these activities." *Id.* The ALJ also noted that physical and neurological examinations have shown Frazier's fine motor movements to be intact and that Frazier had not reported such problems to her doctors. *Id.*

The record supports the ALJ's assessment of Dr. Johnson's opinion. One of Frazier's treating neurologists, Michael A. Sisk, M.D., reported in December 2001 and in September 2004 that Frazier had no neurological abnormalities. (R. 367, 429.) Another neurologist, William L. Tingler, II, M.D., examined Frazier in September 2005 noting that her motor exam showed symmetric strength with no pronator drift, intact fine finger movements, normal coordination, and brisk reflexes in the upper and lower extremities. (R. 435.) Frazier received two epidural steroid injections ("ESIs") in her thumb in June 2004 from Alfonzo H. Myers, M.D., an orthopedic specialist. (R. 401 - 402.) The record does not indicate that Frazier sought any more medical attention for her hands after June 24, 2004. Finally, neurologist Dr. Scialabba treated Frazier in 2008 and 2009, and her neurological examinations were normal throughout that time. (R. 789, 910, 787, 877.)

The evidence of Frazier's daily activities also undermines Dr. Johnson's opinion. Frazier repeatedly reported that she played computer games regularly and was not very limited in her other daily activities. (R. 127, 721.) In addition, after her alleged onset of disability, Frazier

8

worked for four months as a dishwasher and dining room worker, which required Frazier to use her hands extensively. (R. 721-22.) Therefore, I find that substantial evidence to support the ALJ's decision to reject Dr. Johnson's opinion as to Frazier's limitations with regard to her hands.[3]

### *Assessment of Dr. Scialabba opinion*

Frazier argues that the ALJ erred in giving little weight to the opinion of Frazier's treating physician, Dr. Scialabba. On April 9, 2008, Dr. Scialabba noted on a "Seizure Questionnaire," that Frazier suffers from severe and episodic migraines four to six per month and that, as a result, she would be absent from work more than four times per month. (R. 899-902.)

The court gives the opinions of a treating physician controlling weight when the opinions are supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations….

SSR 96-2p.

Whether to give the treating physician's opinion controlling weight requires the ALJ to consider the evidence in support of the opinion and to determine the opinion's consistency with

---

[3] Even if substantial evidence supported Dr. Johnson's opinion, the ALJ's decision to disregard it would be harmless error because a significant number of jobs exist in the national economy which Frazier could perform even with those limitations. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (citations omitted). As the Commissioner notes, the vocational expert testified that one of the jobs Frazier could perform with her limitations was call out operator. The job only requires occasional reaching, handling, or fingering and would thus fall within Dr. Johnson's limitations. Call Out Operator, Dicot 237.367-014, 1991 WL 672186 (G.P.O.). The vocational expert testified that 50,000 call out operator positions exist nationally and 6,800 in the Mid-Atlantic region. (R. 542.). This is sufficient to show that a significant number of such positions exist in the national economy. *See* 20 C.F.R. §§ 404.1566, 416.966. *See also Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979).

9

the whole record.  20 C.F.R. § 404.1527(c)(2); SSR 96-2p.  The ALJ considers whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist.  20 C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ is required to give specific reasons supported by the record if he gives the treating physician's opinion less than controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p.

The objective medical evidence contained in the medical record as whole does not support the conclusion that Frazier would be absent from work more than four times a month. Dr. Scialabba's opinions are supported with little objective medical evidence, and, as the ALJ noted, is "based almost entirely on the claimant's self-reporting [by Frazier] of the severity of her migraines and the effect they may have on her ability to work."  (R. 599.)  *See Craig*, 76 F.3d at 590 n.2 (observing that the fact that a physician notes a claimant's subjective complaints does not transform those subjective complaints into clinical evidence).

Frazier's migraines are well controlled with medication.  In 2003 and again in 2004, Dr. Sisk, one of Frazier's neurologists noted that Toradol was "quite effective [in treating her migraine headaches] and doesn't really bother her."  (R. 54, 362, 377, 524.)  Additionally, Dr. Sisk reported that Frazier has been seizure free since September 1997.  (R. 367, 429.)  In 2005, Dr. Tingler, another neurologist, reported that Frazier's epilepsy was well controlled with Dilantin and her migraines, with Toradol.  (R. 434, 460.)  From October 15, 2006 until July 9, 2007, Frazier's sought no medical treatment for her migraine condition, and, in fact, sought no medical treatment for any other ailment.  (R. 895.)  Frazier presented to Dr. Tingler's office on July 9, 2007 complaining of headaches following a fall, but Dr. Tingler found no neurological deficits at that time.  (R. 895.)

10

Dr. Scialabba's own treating notes are inconsistent with his April 2008 opinion. On January 1, 2008, Dr. Scialabba noted that Frazier's use of "Goody powder" effectively aborted her migraines. (R. 789.) On April 9, 2008, Dr. Tingler confirmed that, when Frazier takes Migranal, it is effective in controlling her migraines. (R. 910.) Frazier contends that her multiple emergency room visits suggest that her migraines were not well controlled with medication. (Pl. Br. at 27.) However, Dr. Tingler noted that Frazier visited the emergency room in March 2008, because she had run out of Migranal. (R. 910.) Indeed, Frazier only sought medical attention for her migraines at an emergency room on nine occasions during the seven year span of records before the court.[4] (R. 188-192, 197-202, 304-7, 318-25, 441, 769, 823-842.) Finally, on July 15, 2009, Dr. Scialabba again observed that Toradol effectively controlled her migraines, and thus, her migraines were stable. (R. 877.)

The record supports the ALJ's assessment of Dr. Scialabba's opinion. The objective medical evidence in the record explicitly establishes that Frazier's migraines were effectively controlled with her medications. Indeed, both Dr. Tingler and Dr. Scialabba repeatedly and consistently noted that Frazier was "doing well" on Dilantin and her migraines were well controlled with both Migranal Nasal Spray and Toradol. (R. 787, 789, 877, 910.) Throughout the relevant time period, Frazier's neurological exams were grossly normal. Therefore, I find that substantial evidence in the administrative record supports the ALJ's decision to give Dr. Scialabba's April 2008 opinion less weight.

---

[4] Frazier sought medical attention for a myriad of other ailments throughout this time period for back, elbow, abdomen, and chest pain, a sprained ankle, and as a result of a car accident. ( R. 188-121,231-39, 246-252,  256-262, 318- 340, 765, 776-81, 815-822, 843-876, 911-18.)

11

**ALJ's Credibility Determination**

Frazier argues that the ALJ erred in finding her subjective complaints of the intensity of her pain and extent of her limitations only partially credible.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and her ability to work. *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). Frazier's subjective allegations of disabling symptoms are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Frazier has met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms alleged. *Craig v. Chater*, 76 F.3d 585, 592-93 (4th Cir. 1996). This assessment requires the ALJ to evaluate the intensity and persistence of the claimed symptoms and their affect upon Frazier's ability to work. *Id*. at 594-95.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

The ALJ first noted that Frazier's medically determined physical impairments could reasonably be expected to produce pain. The ALJ then determined that Frazier's testimony concerning the limiting effects of her migraines, fibromyalgia, back pain, and the combination of her scoliosis, epilepsy and disorder of the muscle ligaments and joints was only partially credible, because the record contains no indication that Frazier's pain could not be controlled by

medication and no pathological clinical signs establishing a pattern of pain so severe that it "prevent[s] the claimant from engaging in any work on a sustained basis." (R. 510.)

The ALJ noted that the record contains no clinical evidence or pathological manifestation of disabling pain to corroborate Frazier's testimony in regards to the limiting effects of her pain. (R. 510.) Her treating physicians, Drs. Scialabba and Tingler consistently reported that her migraines were well controlled with medication. (R. 54, 362, 377, 460, 524, 787, 789, 877, 910.) From October 15, 2001 until September 1, 2009, Frazier presented to the emergency room only nine times with complaints of migraines, photosensitivity, and nausea. (R. 188-192, 197-202, 304-7, 318-25, 441, 769, 823-842.) Frazier's neurological examinations consistently produced grossly normal results. (R. 435, 787, 789, 877, 910.)

Frazier's medical records indicate a brief and inconsistent pattern of treatment for her musculoskeletal problems. Dr. Myers, an orthopedic specialist, last treated Frazier for her back discomfort in June 24, 2004. (R. 451.) Dr. Myers referred Frazier to physical therapy, but the record does not indicate that she followed up or pursued a course of treatment. Moreover, Frazier testified that she has significant pain in her wrists and was diagnosed with carpal tunnel, but cannot afford the surgery to correct this condition. (R. 526.) The record does not indicate that Frazier sought any medical alternatives to surgery to ease the pain in her wrists. In regards to her fibromyalgia, the record indicates that on December 7, 2004, Frazier saw Joseph P. Lemmer, M.D., a rheumatologist, who noted that Frazier had myalgias and arthralgias consistent with fibromyalgia. (R. 451-52.) Frazier was prescribed medication, but never returned to Dr. Lemmer to follow up on this condition and did not seek any other medical treatment for her fibromyalgia symptoms.

13

The ALJ considered the wide range of Frazier's daily activities in determining her testimony regarding the functional limitations of her pain only partially credible. Frazier worked and remained active during the period between her alleged disability onset date, June 1, 2002, and her date last insured, June 30, 2004, the very period in which Frazier must establish that her impairments caused a "functional loss" for purposes of a DIB determination.[5] *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (the mere presence of impairments does not automatically entitle a claimant to disability benefits; there must be a showing of related functional loss). Frazier's statements in her January 2009 work history report indicate that she worked as a dishwasher and dining room worker during the relevant period and that she had little or no functional limitations during this time. (R. 722.) This position entailed washing dishes, vacuuming, mopping, sweeping floors, working in the dining room, and frequently lifting ten pounds. *Id.* Additionally, in May 2004, Frazier noted that she was able to walk, drive a car, visit friends, go to lunch and social functions, take walks, and care for her pets. (R. 122.) Frazier performs housekeeping duties every other week included vacuuming, pulling out all of her furniture, dusting, mopping the kitchen, reorganizing the shelves, doing laundry, and cleaning both bathrooms. *Id.*

The objective medical evidence, Frazier's own statements, and the lack of any clinical or pathological manifestations of pain support the ALJ's decision to find that Frazier's testimony was only partially credible.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the

---

[5] The Commissioner argues that Frazier failed to meet her burden to show that she suffered functional loss prior to her date last insured, June 30, 2004. (Def.'s Mot. for Summ. Judgment 13-14.) In order to establish disability, Frazier has the burden of establishing that she was disabled during this time period of insurance coverage.

14

defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Entered: August 13, 2012

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge